IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BNVS Transport LLC and MEIN & MEEN TRUCKING, INC., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>C&K TRUCKING, LLC,<br><br>Defendants. | Case No. 1:20-CV-04305<br><br>HON. JOHN ROBERT BLAKEY<br><br>HON. M. DAVID WEISMAN<br><br>**DATE:** October 20, 2022<br>**TIME:** 11:00 a.m.<br>**COURTROOM:** 1203<br>**JUDGE:** Hon. John Robert Blakey |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF RULE 23 CLASS ACTION SETTLEMENT**

## I. INTRODUCTION

Plaintiffs seek preliminary approval of a proposed non-reversionary, class-action settlement to resolve claims brought under the Truth in Leasing Act (TILA), 15 U.S.C. § 1601, et seq., and Illinois common law of contract and fraud, on behalf of Illinois-based owner operators of Defendant C&K Trucking, LLC. The owner-operators are small "mom and pop" companies that provide drayage transportation services for Defendant and its customers. In the underlying lawsuit, Plaintiffs claimed that Defendant often paid them and the other owner-operators less than the amounts to which they were contractually entitled. Plaintiffs also claimed that Defendant made unsubstantiated deductions and chargebacks to their pay and that Defendant did not adequately disclose its methods for determining compensation. Defendant hotly contested Plaintiffs' allegations, contending that it paid the owner-operators in accordance with the contracts, did not mislead the owner-operators in the terms of their pay, did not make unsubstantiated deductions, and that the owner-operators did not rely on any alleged misstatements to their detriment in any event.

After motion practice on the pleadings, written discovery and depositions, and the filing of Plaintiffs' motion for class certification, the parties agreed to attempt to mediate the case with Professor Lynn Cohn, Clinical Professor of Law and Co-director of the Center on Negotiation, Mediation, and Restorative Justice at the Northwestern School of Law. Professor Cohn held two mediation sessions on June 27, 2022 and July 29, 2022. The professional, arms-length negotiations were informed by the documents, interrogatory responses, and depositions provided by both sides, the exchange of mediation data analyzed by the parties and their experts, and the exchange of mediation briefs and argument with substantive legal and factual analysis. Representatives of the parties, including Sean McShane, President and CEO of Defendant C&K Trucking, LLC, Anna

Faford, Vice President of Strategy of Defendant C&K Trucking, and the Named Plaintiffs' owner-operators, attended both sessions. After extensive negotiations and thorough analysis of Defendant's compensation and revenue data, and with Professor Cohn's assistance, the parties were able to reach the proposed class action settlement.

As discussed below and documented in counsel's declarations submitted in support of this motion, the proposed Settlement satisfies all the criteria for settlement approval under Fed. R. Civ. P. 23, and comfortably falls within the range of reasonableness for preliminary approval. Accordingly, Plaintiffs request that the Court preliminarily approve the proposed Settlement.

## II. KEY TERMS OF THE PROPOSED SETTLEMENT

The key terms of the Settlement Agreement include:

- Gross Settlement Amount: The Gross Settlement Amount is **$3,350,000.00**. It is the total sum Defendant agrees to pay in exchange for Plaintiffs' and the Settlement Class Members' releases. *See* Class Action Settlement Agreement at § 3.1, attached as Exhibit 1 to the Declaration of Joshua Konecky in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement ("Konecky Decl.").
- No Reversion: All settlement funds will be paid out, and none will revert to Defendant. *Id.*
- Scope of Class Release: The claims being released for the Participating Class Members are limited to those claims arising during the applicable statutes of limitations that were pleaded or could have been pleaded based on the facts alleged in Plaintiffs' original Complaint and/or First Amended Complaint. *Id.* at §§ 1.14, 6.2.
- Class Definition: The Class is defined in the Settlement Agreement to comprise all current or former owner-operators based in Illinois who signed one of Defendant C&K Trucking LLC's standardized Independent Contractor Agreements and provided services pursuant to that

agreement(s) at any time from July 22, 2010 to July 29, 2022. *Id*. at § 1.4. This proposed Class for settlement purposes is materially the same as the class Plaintiffs proposed in their Motion for Class Certification, which was pending at the time the parties reached their Settlement. *See* ECF 62 (Notice of Motion for Class Certification, filed May 20, 2022).

- Class Period: The time-period covered by the Class definition and Class Release tracks the applicable statutes of limitations for class claims asserted in this case. There is a "TILA Class Period" that covers the period from July 22, 2016 to July 29, 2022, to comport with the 4-year statute of limitations under the TILA. *See* Settlement at § 1.13; *Owner-Operator Indep. Drivers Ass'n v. Mayflower Transit, LLC*, 615 F.3d 790, 792 (7th Cir. 2010). There also is an "Illinois Class Period" that covers July 22, 2010 to July 29, 2022, to comport with the 10-year statute of limitations for the alleged Illinois contract claims. *See* Settlement at § 1.12; 735 ILCS 5/13-206; Konecky Decl. at ¶ 21. Additionally, the end point for both Class Periods is July 29, 2022, the date the parties reached the Settlement and signed the Memorandum of Understanding. Settlement at §§ 1.11-1.13; Konecky Decl. at ¶ 21.

- Net Settlement Amount: The Net Settlement Amount means the Gross Settlement Amount, less the following payments in the amounts approved by the Court: Class Representative Service Payments, Class Counsel Fees Payment, Class Counsel Litigation Expenses Payment, the Administration Expenses Payment, and the Reserve Fund. *See* Settlement at § 1.27.

- Direct Payments to Settlement Class Members / No Claim Forms: Settlement Class Members who do not opt out of the Settlement will not need to submit claims to receive their pro-rata settlement payment. Rather, Individual Settlement Payments (i.e., settlement checks) will be automatically sent to all class members for whom a valid address can be located either through Defendant's records, and/or by the Settlement Administrator through the National Change of

Address database (NCOA). *Id.* at § 4.4; proposed Class Notice, Exh. A to Settlement Agreement and Exh. 2 to Konecky Decl. ("Class Notice").

- Distribution Formula: Each Settlement Class Member's individual share of the Settlement will be proportional to the number of weeks the class member worked for Defendant during the applicable time period, in comparison to the aggregate number of weeks all Settlement Class Members combined worked for Defendant during the same period. Settlement Agreement at § 3.2.4(a), (c); Konecky Decl. at ¶ 24. Additionally, the workweeks within the TILA Class Period will receive twice the weight as the workweeks occurring within the broader Class Period, but before the TILA Class Period, § 3.24(b); Konecky Decl. at ¶ 25. As discussed below, the parties allocated the workweeks in this fashion to account for the relative strength and value of the TILA claims as opposed to the Illinois common law claims. The exact formula is set forth in Section 3.2.4 of the Settlement Agreement as well as Section 4 of the proposed Class Notice.
- Tax Allocation: Each participating class member's individual class member payment will be reported on IRS 1099 forms. Settlement Agreement at § 3.2.4.1.
- Service Award: The Settlement provides that Plaintiffs may seek service payments to the Class Representatives (Ms. Stephens, Mr. Shurn, and Mr. Muhammad), not to exceed $20,000.00 per person (subject to Court approval), which Defendants will not oppose. Settlement Agreement at §§ 1.15, 1.16, 3.2.1; Konecky Decl. at ¶ 46.
- Attorneys' Fees and Costs: Plaintiff's attorneys' fees and costs are included in the gross settlement amount of $3,350,000.00. The Agreement provides that Plaintiffs may seek attorneys' fees totaling no more than one-third of the gross settlement amount. *See* Settlement at § 3.2.2. This is in line with common practice in this Circuit of using a percentage method and is within the "'typical' fee 'between 33 and 40 percent[.]'" *T.K. v. Bytedance Tech. Co.*,

Ltd., 2022 U.S. Dist. LEXIS 65322, at * 66 (N.D. Ill. Mar. 25, 2022) (Blakey J.) (quoting *Dobbs v. DePuy Orthopaedics, Inc.*, 885 F.3d 455, 458 (7th Cir. 2018)); Konecky Decl. at ¶¶ 47-48. The Agreement further provides for reimbursement of Plaintiffs' counsel's documented out of pocket costs, *see* Settlement at § 3.2.2, currently estimated to be approximately $40,056. *See* Konecky Decl. at ¶ 49. Plaintiffs will make a separate motion for attorneys' fees and costs under Rule 23(h), on a date to be set by the Court. Konecky Decl. at ¶ 50.

- Class Notice: The proposed Class Notice sets forth in plain terms, a statement of case, the terms of Settlement, the attorneys' fees, costs, and the service award being sought, an explanation of how the settlement allocations are calculated, each Class Member's own credited workweeks, total Class Member workweeks, as well as the Class Member's estimated settlement award. *See* Class Notice at p. 1 and §§ 1, 3, 4. Each Class Notice will be individually tailored to show the estimated dollar amount of the Individual Settlement Payment for that Class Member. *See* Settlement at § 8.3.2; Class Notice at p. 1. The Class Notice will be sent to all identified Class Members in both English and Spanish first-class mail. *See* Settlement at §§ 1.10; 8.3.2. Defendant will provide the Settlement Administrator with the last known contact information of the Class Members and the Administrator will conduct a National Change of Address search before mailing the Class Notices. *Id.* at §§ 4.2, 8.3.2. The Settlement Administrator will also remail Class Notices to any Class Members whose Class Notices are returned with a forwarding address and, for any whose Class Notices are returned without a forwarding address, the Settlement Administrator will perform address searches (skip tracing) and remail to any new addresses found. *Id.* at § 8.3.3. The Settlement Administrator also will set up a toll-free number and a website posting the Class Notice and other important case documents. *See* Settlement at § 8.7.1.

- Right to Object. Participating Class Members will have 60 days following the date the Settlement Administrator mails the Class Notice to submit written objections. *See* Settlement at §§ 1.38, 8.6. Participating Class Members may also object by appearing at the Final Approval Hearing at the Court's discretion. *Id.* at § 8.6.3. The proposed Class Notice explains the objection procedures to the Class. *See* Class Notice at § 7.
- Right to Opt Out. Participating Class Members will have 60 days following the date the Settlement Administrator mails the Class Notice to opt out of the Settlement. *See* Settlement Agreement, §§ 1.38, 8.4. The proposed Class Notice explains the objection procedures to the Class. *See* Class Notice at § 6.
- Right to Challenge Defendant's Workweek Records. Class Members will have the opportunity, should they disagree with Defendant's records regarding the workweek information stated on their Class Notice, to provide documentation and/or an explanation to show contrary workweeks. If there is a dispute, counsel for the parties will attempt to resolve it, and if such efforts do not result in an agreement as to the proper workweek number, the Court will determine the proper number. Settlement Agreement at §§ 8.5, 8.7.4.

## III. ARGUMENT

### A. Overview of the class action settlement process

"'Federal Rule of Civil Procedure 23(e) requires court approval of any settlement that effects the dismissal of a class action.'" *In re Tiktok, Inc. Consumer Privacy Litig.*, 565 F. Supp. 3d 1076, 1083 (N.D. Ill. 2021). "Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996).

The court approval process comprises three principal steps: (1) a preliminary approval hearing, at which the court considers whether the proposed settlement is within the range of

reasonableness possibly meriting final approval; (2) dissemination of notice of the proposed settlement to class members for comment; and (3) a formal "fairness hearing," or final approval hearing, at which the Court decides whether the proposed settlement should be approved as fair, adequate, and reasonable to the class. *See* Manual for Complex Litigation (Fourth) §§ 21.632-34 (2004). This procedure safeguards Class Members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests. *See* Newberg on Class Actions, § 11.22, *et seq*. (4th ed. 2002).

### B. The Settlement should be preliminarily approved

#### 1. <u>The standards for preliminary approval</u>

At this preliminary approval stage, the Court "undertake[s] three essential inquiries." *In re Tiktok, Inc.*, 565 F. Supp. 3d at 1083. The first is "whether [the Court] 'will likely be able' to certify the putative class for purposes of judgment on the proposed settlement." *Id.* The second is "whether the proposed settlement is 'within the range of possible approval' with regard to the criteria set forth in Rule 23(e)(2)." *Id.* The "final [inquiry] is whether the proposed notice plan provides 'the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.'" *Id.* at 1091.

### C. The Settlement Class meets the criteria for certification under FRCP 23

#### 1. <u>The scope of the Settlement Class is appropriate</u>

The Settlement Class comprises all current or former owner-operators based in Illinois who signed one of Defendant's standardized Independent Contractor Agreements and provided services pursuant to that agreement(s) at any time from July 22, 2010, to July 29, 2022. In other words, it is localized to the state out of which Plaintiffs were based. This proposed Class for settlement purposes is materially the same as the class Plaintiffs proposed in their Motion for Class

Certification, which was pending at the time the parties reached their Settlement. *See* ECF 62 (Notice of Motion for Class Certification, filed May 20, 2022). Moreover, Plaintiffs tailored their class definition in the Motion for Class Certification and again in the Settlement Agreement to just those owner operators operating out of Illinois, further supporting manageability.

### 2. The elements of Rule 23(a) are satisfied

#### a. *Rule 23(a)(1): Numerosity*

The first requirement of Rule 23(a) is that the class be so numerous that joinder of all members would be "impracticable." *See* Fed. R. Civ. P. 23(a)(1). Here, Defendant estimates from a review of its records that there are approximately 1,010 Class Members, which satisfies numerosity. *See, e.g.*, *Mulvania v. Rock Island Cnty. Sheriff*, 850 F.3d 849, 859-60 (7th Cir. 2017).

#### b. *Rule 23(a)(2): Commonality*

Rule 23(a) also requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Courts give Rule 23(a)(2) a 'highly permissive reading,' requiring plaintiffs to show only that there is more than one issue of law or fact in common." *Boyd v. Godinez*, 2013 U.S. Dist. LEXIS 131571, at *7 (N.D. Ill. Sept. 16, 2013). That a defendant "ha[s] engaged in standardized conduct towards members of the proposed class" is sufficient, even where there may be "[s]ome factual variation in the details of individual claims[.]" *Id.*

Here, the Named Plaintiffs' claims and those of the other Class Members arise from the same or similar standardized conduct. *See* P's Class Cert. Mot. (ECF 62-1) at §§ II-D, III-A.2. Plaintiff's Motion for Class Certification sets forth numerous common questions apt to drive resolution of this case, including whether C&K's standard contract violates the Truth in Leasing Act Regulations pertaining to deductions and charge-backs. *See id*; *see also See In re Tiktok, Inc.*,

565 F. Supp. 3d at 1084 ("[T]here are abundant questions of law and fact arising from the 'nucleus of operative fact' common to" the class).

**c. *Rule 23(a)(3): Typicality***

"To satisfy Rule 23(a)(3)'s typicality requirement, [a p]laintiff must show enough congruence between her claims and the unnamed class members' claims to warrant allowing her to litigate on behalf of the group." *Magpayo v. Advocate Health & Hosps. Corp.*, 2018 U.S. Dist. LEXIS 26282, at *32 (N.D. Ill. Feb. 20, 2018) (Blakey, J.). Typicality "[g]enerally" exists where claims "'arise[] from the same event or practice or course of conduct that gives rise to the claims of the other class members,' and asserts the same legal theory." *Id.*

The Named Plaintiffs here satisfy typicality. As Plaintiffs discussed in their motion for class certification, Defendant admitted to underpaying Illinois-based owner-operators, including them. *See* ECF 62-1 at § III-A.3. As Plaintiffs also discussed in their motion for class certification, the Named Plaintiffs signed the same standard Contract as the rest of the putative class and were subject to the same allegedly unlawful pay policies and practices. *See* ECF 62-1 at § III-A.3.

**d. *Rule 23(a)(4): Adequacy of Representation***

"To satisfy the adequacy of representation requirement, [p]laintiffs must show that they will fairly and adequately protect the interests of the class." *Beley v. City of Chi.*, 2015 U.S. Dist. LEXIS 163919, at * 14 (N.D. Ill. Dec. 7, 2015). The adequacy analysis requires a court to "determine whether [p]laintiffs have: (1) antagonistic or conflicting claims with other members of the class; (2) a sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) counsel who is competent, qualified, experienced and able to vigorously conduct the litigation." *Id.* at *14-15.

Here, the Named Plaintiffs' "interests are aligned with, not antagonistic to, those of the absent…[c]lass members" because they suffered the same or similar alleged harms as the rest of the class and do not have conflicts. *See In re Tiktok, Inc.*, 565 F. Supp. 3d at 1085; *see also* ECF 62-1 at § III-A.4. Moreover, they have vigorously defended the class interests. *See id.*; Konecky Decl. at ¶¶ 43-46. Plaintiffs' counsel have also advocated vigorously on behalf of the class and are experienced in prosecuting complex individual and class actions, including those involving pay disputes in the trucking industry. *See* ECF 62-1 at § III.A-4; Konecky Decl. at ¶¶ 4-18, 38-42; Vucko Decl. at ¶¶ 1-11.

**3. The elements of Rule 23(b)(3) are satisfied**

"[U]nder Rule 23(b)(3), the Court also must consider whether it is likely to conclude that: 'the questions of law or fact common to the class members predominate over any questions affecting only individual members'; and 'a class action is superior over other available methods for fairly and efficiently adjudicating the controversy.'" *In re Tiktok, Inc.*, 565 F. Supp. 3d at 1086. "Factors particularly pertinent to these issues" in the context of a motion for preliminary approval "'include: (A) the class members' interests in individually controlling the prosecution…of separate actions' and (B) the extent and nature of any litigation concerning the controversy already begun.'" *Id.*

**a. *Common questions predominate***

Common questions predominate here because those at issue involve the application of the same statutory, regulatory, and contract language to the entire class. They also involve common evidence – including standard business contracts, written representations, settlement sheets, and related business records, as well as C&K's own admissions – that apply class-wide. *See* ECF 62-1 at § III-B.1. The class is also subject to common defenses to their claims as asserted by the

Defendant. These common questions thus involve "generalized proof" and "are more substantial than any issues that may be subject only to individualized proof." *In re Tiktok, Inc.*, 565 F. Supp. 3d at 1086; see also ECF 62-1 at § III-B.1.

**b. *A class action is superior***

Rule 23(b)(3)'s final requirement is "that the class action be superior to other methods of adjudication." This requirement is satisfied because there is no indication that Class Members seek to individually control their cases, that individual litigation is already pending in other forums, or that this particular forum is undesirable for any reason. Fed. R. Civ. P. 23(b)(3)(A)-(D). Accordingly, certification of the Settlement Class is superior to any other method of resolving this matter, since it "would achieve economies of time, effort, and expense, and promote…uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results." See *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997).

**D. The proposed settlement is within the range of possible approval.**

In this Circuit, determining whether a settlement is within the range of possible approval at this stage typically entails "'a more summary version of the final fairness inquiry[.]'" *In re Tiktok, Inc.*, 565 F. Supp. 3d at 1083. To conduct the fairness inquiry, courts in this Circuit "consider…'(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed.'" *Id.* at 1083-84. While the first factor is "most important…courts do not focus on individual components of the settlements, but rather view them in their entirety in evaluating their fairness." *Id.* at 1084.

**1. The settlement is the product of vigorous, arm's-length negotiations**

As a court in this District recently noted, "several circuits…apply a presumption that a class action settlement reached through 'arm's-length negotiations between experienced, capable counsel after meaningful discovery' is fair, reasonable, and adequate." *Id.* at 1088 n.5.

The parties reached the proposed settlement before the Court after significant litigation, including motions to dismiss and the filing of Plaintiffs' motion for class certification; extensive formal and informal discovery, including depositions, interrogatories, document production, and pay data; two mediation sessions with Professor Lynn Cohn of Northwestern Law's Center on Negotiation and Mediation; the exchange of substantive argument and analysis in connection with the mediation sessions; and meet-and-confer between the mediation sessions. *See* Konecky Decl. at ¶¶ 8-18, 38-42. Additionally, the negotiations were informed, among other things, by damages analyses conducted by experts, including Plaintiffs' forensic accountant, who carefully analyzed Defendants' revenue and compensation data. *Id.* Moreover, representatives of the Named Plaintiffs, as well as Defendant's CEO and V.P. of Strategy, personally participated in the mediation efforts. *Id.* at ¶ 17.

**2. The settlement presents a meaningful benefit to the class and has no obvious deficiencies**

"[T]he most important factor relevant to the fairness of a class action settlement is…the strength of [a] plaintiff's case on the merits balance against the amount offered in the settlement." *Kaufman v. Am. Express Travel Related Servs., Co.*, 877 F.3d 276, 284 (7th Cir. 2017). Analyzing this factor typically entails an examination of litigation risks and potential outcomes, which "need not always be quantified, particularly where there are other reliable indicators that the settlement reasonably reflects the merits of the case." *Id.*; *see also In re Tiktok, Inc.*, 565 F. Supp. 3d at 1087.

The Settlement is based on an evaluation of revenue and compensation data by counsel, the parties, and a forensic accountant who consulted with Plaintiffs' counsel. The parties conducted an arms-length negotiation on the potential value of Plaintiffs' claims in light of what the data shows, as moderated by a vetting of the strengths and risks of prevailing on the claims and the delays of further litigation. *See* Konecky Decl. at ¶¶ 4-18, 38-42.

While based on evaluation of the actual revenue and delivery data to estimate the actual alleged shortfalls, it is also noteworthy that the Settlement provides a beneficial result for the Class when viewed in terms of a per Class Member recovery as well. Even after the maximum attorneys' fees that Plaintiffs may seek under the Settlement Agreement, counsel's out-of-pocket costs (currently estimated to be $40,056), the highest service award permitted under the Settlement Agreement, and the estimated costs of settlement administration, there will be approximately $2,078,968 to distribute to the approximately 1,010 members of the potential Settlement Class. Konecky Decl. at ¶ 22. This works out to an average share of approximately $2,058 per person. As noted, Settlement Class Members with longer tenures will receive larger shares reflecting their longer terms of service. This provides a meaningful benefit, especially considering the hotly contested issues, strengths, risks and delays of further litigation.

Additionally, the Settlement provides each Settlement Class Member the opportunity, should they disagree with Defendants' records regarding their number of Workweeks, to dispute the records by providing documentation and/or an explanation to show a different number of Workweeks. Settlement Agreement at § 8.5. The Settlement provides that counsel for the parties will attempt to resolve any Workweek disputes, and if those efforts fail, the Court will decide the outstanding issue. *Id.* Settlement Class Members will also be able to submit written objections to the Settlement and/or appear at the Final Approval/Fairness Hearing to have their objections heard

by the Court. *Id.* at § 8.6.2. Alternatively, Class Members will have the opportunity to opt-out of the Settlement should they so desire for any reason. *Id.* at § 8.6.3. These procedural safeguards are explained in the Notice of Class Action Settlement to the Class (attached as Exhibit A to the Settlement Agreement and separately as the Exhibit 2 to Konecky Decl.).

**3. <u>The distribution formula is reasonable</u>**

Settlement Class Members' shares will increase or decrease proportionally based on the number of Workweeks they have in comparison to the Workweeks of all the Settlement Class Members combined. Konecky Decl. at ¶ 24. Thus, the Settlement Class Members' respective shares will increase or decrease proportionally based on the amount of time worked during the liability period. This is a reasonable proxy for the allocating the settlement fund amongst the Settlement Class Members. *Id*.

Additionally, the Workweeks within the TILA Class Period will be weighted twice those occurring within the broader Class Period, but before the TILA Class Period. *Id.* at ¶ 25. This reflects the assessment, after thorough vetting, of the relative strengths of the TILA and Illinois common law claims. The TILA claims, unlike the common law claims, encompass claims related to deductions from owner-operators' pay (rather than just claims regarding underpayments). The common law fraud claim also presents the challenge of proving reliance on a class basis, while Plaintiffs submit that the TILA claim does not require a showing of reliance (though the parties disputed this position – reflecting one of the litigation risks at issue). *Id.* at ¶ 26.

**E. The Court should order dissemination of the proposed class notice**

**1. <u>The Settlement Agreement provides for the best method of notice practicable under the circumstances</u>**

Rule 23(e) requires that before finally approving a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R.

Civ. P. 23(e). Where the class is certified pursuant to Rule 23(b)(3), the notice must be the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

The parties have agreed on a notice plan that would provide Class Members with individual notice by first class mail through a careful process that will provide them with extensive information designed to protect their rights. *See* Settlement at §§ 1.10, 4.41, 8.3.2, 8.7.1; *see also* Section II, *supra*. Plaintiff requests that the Court approve this method of notice as the best practicable under the circumstances. *See Kaufman*, 877 F.3d at 284. Plaintiff further requests that the Court appoint JND Legal Administration to serve as Settlement Administrator. JND's qualifications and understanding of the settlement notice and administration process are described in the Declaration of Jennifer M. Keough, filed herewith. Keough (Admin) Decl. at ¶¶ 1-14.

The proposed form of notice also complies with Fed. R. Civ. P. 23(c)(2)(B). *See* Notice at p.1, §§ 1, 3, 6, 8; Section II, *supra*. Plaintiffs request that the Court approve the form of notice.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests that the Court grant their Motion for Preliminary Approval of Class Action Settlement and set a schedule for Final Approval.

DATED: September 28, 2022 Respectfully submitted,

**VUCKO LAW LLP**
By: *<u>/s/ Stacey Vucko</u>*
Stacey Vucko

**SCHNEIDER WALLACE COTTRELL KONECKY LLP**

By: *<u>/s/ Joshua Konecky</u>*
Joshua Konecky
Sarah McCracken

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that September 28, 2022, I electronically filed the foregoing document with the Clerk of Court using the Court's CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

*/s/ Joshua Konecky*
Joshua Konecky